focused on motivating the kids and the young teens out here in our area. The reason I tell you all this is because I was one of those kids in trouble,gangs, and also in jail, and Aldo was the one that helped me get out of all that mess. I now got my own buisness as a roadside assistance, run a construction buisness , have my own car club "Carnales Customs",my 66 impala lowrider that Aldo help me build. I have this because Aldo took the time to talk to me & put good sence into me by telling me that there are roads to choose in life and by gangbanging, doing or selling drugs is not the way, it only leads you to one place jail or dead. All the advice he gave me I took into consideration & feel as if I'm making it in life, and thats not only me there are alot of other people that feel the same way about him. I really hope you feel the words that I'm writing you, your honor and consider a good recomendation on his up comming hearing. I can type forever about

**Exhibit G**
**355**

355

Sl

Aldo but I understand you might be pretty
busy so I'll end this letter now.
  Thank you & have a nice day!


Sincerly,

Gustavo H Gomez


**Exhibit G
356**

82

Ms. Cristina M. Reading A.C.S
1219 Pacific Street
Bakersfield, California
-93305-
(661) 322-5046


February 17, 2007


Honorable Henry P. Ipema Jr.
Immigration Judge
401 West "A" Street Suite 800
San Diego, Ca. 92101
(619) 557-6052

RE; Mr. Aldo Omar Crote #A92206764

Dear Honorable Judge Ipema:

My name is Cristina Reading I am a 35 year old divorced mother with one 14 year old daughter. I am an Animal Care Specialist with a degree and I also hold degrees in Animal Science, Business Management and Human Resources Management. I worked for a Fortune 500 company in San Francisco as their Human Resources Administrator in charge of 500 Security personnel, Investigators, including 50 Federal Marshals in addition to hiring and firing 40 people a week. I learned a great deal regarding a person's character through this position.
I am currently a Support Staff member for The Young Marines of America which is a program sponsored by the Marine Corp League and we do drill on an actual Marine base. In order to be staff we must clear a stringent government background check.

I have known Mr. Crotte for nearly 25 years. We met in the neighborhood we grew up in living around the corner from each other in San Francisco, Ca. Our relationship has grown through the years and has become a very strong friendship. We have shared many good times hunting, fishing doing what friends do throughout the years. Mr. Crotte is my best friend and always will be in any circumstance. He is a very kind, caring, free spirited person willing to help a friend or a stranger at anytime with any project, Although sometimes he would get in over his head coming to the rescue of a stranded friend with a difficult mechanical problem "water pump" on a friends car on the highway, after he drove out to help his friend and not having the correct tool to fix the car would then have to go buy a tool at the nearest store. Later he would tell me the story and I could not help but laugh. His time is something he could and would offer to anyone in need, His time is what he is giving now while waiting to see what his future entails.

Exhibit G
357

357 83

I am an excellent judge of character and would never put my personal with the Young Marines or professional reputation at risk for Mr. Crotte unless I truly believe that Mr. Crotte is a person of good morale character, I know/knew his mother and father and saw how they raised their children strict and proper. I know personally that Mr. Crotte is a respected person of the community, He is a huge asset to the Bay Area community including but not limited to; helping kids to be and stay drug & gang free, Working with former San Francisco Mayor Mr. William Brown while he was in office on several community projects involving lowrider car clubs, The car clubs would get together with Mr. Crotte every year to work with the San Francisco Fire Department's Annual Toy Drive for needy children, They would also do an annual Thanksgiving Turkey Drive for needy families, Yearly projects with parades "Cinco de Mayo" "Carnaval" where the promoters would ask for a parade of lowrider cars in the parades year after year.

Mr. Crotte is known at least statewide from what I personally know for his excellent ability as a lowrider hydraulic installer as well as a mechanic. Mr. Crotte has entered his car into some car shows and won trophies, photos of his car have been published in magazines, on display in government buildings which lead more clients to Mr. Crotte for mechanical or hydraulic services. Mr. Crotte would not have a problem supporting his self financially.

Your Honor, I have known Mr. Crotte for nearly 25 years, he is a very sincere individual, He has been in this country for 27 years, the situation he is in is extremely unfortunate for Mr. Crotte, and everyone who loves him, my daughter, me and all of his family and friends who hope for a favorable outcome for him. Hopefully with the help of other respectful citizens both near and far we will see a positive outcome.

Your Honor, Please do not take him from us, he has not only been a father figure to my daughter for 11 years , but to other children as well. Mr. Crotte has done this out of selflessness and did not want to see kids grow up without a dad and we need him back with us and our children.

Thank you for you time Your Honor,

Sincerely,

*[signature]*

# Exhibit G
# 358

358 84

SAN FRACISCO, CALIFORNIA                    FEBRUARY 14, 2007

## LETTER OF RECOMMENDATION

## TO WHOM IT MAY CONCERN:

I, **ESTHELA SALAS PADRON**, MARRIED, OF LEGAL AGE AND RESIDENT OF
THE CITY OF SAN FRANCISCO, CALIFORNIA; HEREBY DECLARE THAT I
KNOW MR. ALDO OMAR CROTTE SINCE 19 YEARS. MR. ALDO OMAR
CROTTE IS GOOD AND HONORABLE PERSON, VERY RESPECTFULY, HARD
WORKING, OF GOOD MORAL CHARACTER AND RELIABLE. SINCE I HAVE
KNOWN MR. ALDO, I OBSERVED THAT HE NEVER HAS BEEN INVOLVED IN
DRUGS AND NOT BEING A VIOLENT PERSON. HE HAS BEEN WORKING
REPAIRING CARS, BODY SHOP AREA. I AM AN AMERICAN CITIZEN AND MY
CERTIFICATE IS THE NUMBER 23644597.

THIS IS THE FIRST TIME THAT I KNOW THAT HE HAS BEEN IN TROUBLE
WITH THE LAW. MR. ALDO OMAR CROTTE IS IN PRISON AT THE
FOLLOWIING ADDRESS:
                    SAN DIEGO CORRECTIONAL FACILITY
                    P.O. BOX 439049
                    SAN DIEGO, CALIFORNIA

HIS INMATE NUMBER IS 92206764.

I, **ESTHELA SALAS PADRON, DECLARE UNDER THE PENALTY OF
PERJURY THAT THE ABOVE INFORMATION IS THE TRUTH.**

*Esthela Salas Padron*
**ESTHELA SALAS PADRON**
2374 FOLSOM STREET
SAN FRANCISCO, CA 94110
PHONE: 4(415) 206-9404
US PASSPORT No. 302875543 – expire: 04-13-2013

# Exhibit G
# 359

359
85

STATE OF CALIFORNIA,
COUNTY OF SAN FRANCISCO

SUBSCRIBED AND SWORN TO (AFFIRMED) BEFORE ME ROBERTO J. TELLEZ
ON THIS 14 DAY OF FEBRUARY, 2007, BY **ESTHELA SALAS PADRON,**
PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE TO BE THE
PERSON WHO APPEARED BEFORE ME.



ROBERTO J. TELLEZ
NOTARY PUBLIC

ROBERTO J. TELLEZ
Commission # 1653889
Notary Public - California
San Francisco County
My Comm. Expires Mar 24, 2010

# Exhibit G
# 360

360

86

2

*February 12th, 2007*
*To Whom It May Concern:*

### ALDO OMAR CROTTE
#### # 9220-6764

*I have known Mr. Crotte for approximately 14 years as a mechanic, fellow classic car enthusiast, and most importantly friend. I personally can confirm that he is a man of great integrity, is extremely dedicated to his family and work, and has been entirely peace-loving in my presence. Furthermore I admire Mr. Crotte for his drive to resolve and mediate altercations between different groups of people. I personally have seen him neutralize many situations that were well on their way to becoming volatile. Mr. Crotte is also well known for organizing, promoting, and participating in many charitable events like toy drives, food drives, car washes for schools, church fundraisers etc. Mr. Crotte keeps me and many of my friends well informed of the Charity related events that are in the Bay Area.*

*For your information, I am a 35 year old man who has been steadily employed since the age of 19 years old. By myself at the age of 29 years old, I was able to purchase my house that I live in now. One job I held was for ten years. This was security related. My last position at that job was Project Manager for Security. I was responsible for the safety and security for one of the largest shopping centers as well as an attached 38 story Hi-Rise office building located in the financial district of San Francisco. I feel that my many years of working in this field have groomed me to be a good judge of character.*

*Yours faithfully*
*Mr. Jacque Dickey*

# Exhibit G
## 361

361
87

Rosetta Rojas
543 Kentucky St.
Vallejo, CA  94590

To Whom It May Concern:

I am writing on behalf of Aldo  Crotte.

I have known Aldo for 15 years, since 1992.  He has been and continues to be a friend of my sons for many years.

I have always found Aldo to be a generous and respectful young man who showed a great deal of consideration for other people.  He was always welcome in our home.

Aldo always acted as an older brother for my sons  and helped them in whatever endeavor they were trying to accomplish.  I felt at ease when I knew they were with him because I was confident that he would take good care of them and would always make sure they were safe and would not let them get into any trouble.  To this day, as adults with families, they still respect and love him.

Aldo used to talk with us about his hopes and plans for the future.  He had hoped to go into business for himself and still looks forward to fulfilling this dream.

He tries very hard to help those around him and is very generous with his time and resources.  I feel that our family has benefited from knowing this gentleman.

Sincerely,

*Rosetta Rojas*

Mrs. Rosetta Rojas

# Exhibit G
# 362

362

Dominic Rojas
543 Kentucky St.
Vallejo, Ca 94590

To Whom It May Concern:

My name is Dominic Rojas and I have known Aldo Crotte for most of my life, since I
was in grade school. I will be 30 years old next month. This man has always been there
for me and my family, brothers, and now for my son. He has always been there to lend a
helping hand, whether it was helping me on a car or helping my mom in with the
groceries. Aldo has been like an uncle to me forever; always looking out for me and my
twin. He was there for me when my twin passed and I'm proud to have him in my life to
this day. He has always made sure that I was safe and kept me out of trouble, and I have a
lot of love for him for doing that.

Now that I have a son,. I trust him with my son too, to not let any harm come to him.
Aldo is the type of friend you could call on at anytime of the day or night to help you. If
your car breaks down, it doesn't even matter what town you're in. He will come, he will
help. He does this without praise and without expecting anything in return.

I became interested in cars watching him as a child. He was in all kinds of parades in San
Francisco Carnivals and Cinco De Mayo celebrations. There would be huge parades and
block off streets for miles and as I got older, he brought me into that with him. Aldo is
the first man I know of to prove that Low Riding is not for gang members, but for people
who just love their cars, people with families and people that the kids can look up to.
They are good people. Our previous mayor of San Francisco, Willie Brown, thought we
were great. And he even rode in a Low Rider with us once. We have been on T.V. several
times and we have never caused any problems wherever we have gone. Aldo Crotte has
taught us respect for ourselves and others wherever we go.

So please don't deport Aldo Omar Crotte. There are a lot of people who depend on him
and who are better people for having him around.

Thank you for your time.

Sincerely,

Dominic Rojas

**Exhibit G
363**

363

89



**To Whom It May Concern,**

*I am writing this letter on behalf of my dear friend Aldo Omar Crotte. Aldo has been a family friend for 20+ year. We met twenty years ago when we were youngsters working in a restaurant in San Francisco. My family was saddened to hear about his current predicament.*

*Aldo is a hard working, conscientious individual. He is extremely dedicated to those around him. Aldo is also a wonderful, kind, loyal friend.*

*Please let us know how we can help Aldo. We would do anything for him.*

*Warm Regards,*

*Clare Coffey*



**Bartlett Real Estate Group**
**Clare Coffey & Kim Joseph**
(512) 496-8033

Exhibit G
364

364

90

February 7. 2007

To Whom it May Concern:
Re: Aldo Omar Crotte/ # 92206764

My name is Linda Ramos, I am 16 years old and attend Sacred Heat Cathedral Prep. I am an American Citizen, born and raised in San Francisco, California. The purpose of my letter is to describe the person mentioned above, Aldo Omar Crotte. He has known me my entire life. He knew my parents before my brother and I were born. Some years went by and we lost contact with him. About five or six years ago we ran into each other again and have tried to catch up with lost time. The time that I have known Aldo he has been a good friend, big brother, a great support, and gives good advice. He has always told me to stay away from drugs and gangs and, telling me that those tings would lead me to nothing good, to remain in school, get my diploma and go off to college to make a difference. Aldo is a family man, he has always been around to watch and care for his mom. He takes care of her when she is sick, has an operation, or in need of help. There is no one to look after his mom. As far as I know Aldo has been a LowRider, he is the owner of a car club called San Fran Lords, works with other car club members, and works on placing hydraulics in the cars and preparing them for car shows. He is involved in toy drives, car club events, and participates in the annual Carnaval. He has also donated money to different causes such as the ones mentioned above. Aldo has always been there to help me and my family when we were facing rough times and need emotional support. Aldo has always put others needs before his own and many people have forgotten about that. He is a person I can depend on, when I have problems with school or stressed he was always there. All I had to do was call, he always did his best to cheer me up and made the best of what remained of my day. He is a good person and it would be a shame to lose a friend like him. My brother and I both enjoy low riders and being around old cars, we have gone to car shows with him and enjoyed it. Aldo has always taken good care of us and has never forgotten about us. People may have made wrong decisions in their past or things that make others see a different person that does not exist and are just being judged because of what they have heard or seen done, and they may have been given chances, but everyone deserves a second chance, in the case of Aldo Omar Crotte he has made many changes through out his life, and only for the good.

# Exhibit G
# 365

91



**BARTLETT**
REAL ESTATE GROUP

*To Whom It May Concern,*

*I am writing this letter on behalf of my dear friend Aldo Omar Crotte. Aldo has been a family friend for 20+ year. We met twenty years ago when we were youngsters working in a restaurant in San Francisco. My family was saddened to hear about his current predicament.*

*Aldo is a hard working, conscientious individual. He is extremely dedicated to those around him. Aldo is also a wonderful, kind, loyal friend.*

*Please let us know how we can help Aldo. We would do anything for him.*

*Warm Regards,*

*Clare Coffey*



*Bartlett Real Estate Group*
*Clare Coffey & Kim Joseph*
(512) 496-8033

**Exhibit G
366**

366

92

Laura Castañeda
5736 Lancelot Drive
Sacramento, CA 95842
(916) 519-3370

February 20, 2007

To Whom It May Concern:

My name is Laura Castañeda. I am a citizen of the United States of America and a
resident of Sacramento, California. I have been working as a Health Worker II for the
past 16 years for the City and County of San Francisco. I am also a member of the
Association of Realtors of Sacramento and a President of a newly founded corporation,
R.C. &G. Construction, Inc. In addition, I am a mother of 7 children ranging from a 9
year-old daughter to a 25 year-old son.

Mr. Aldo Omar Crotte has been a very good friend of mine and of my family's. I have
known Aldo since he was a young boy- at the tender age of 16, and every since I have
known him he has always been resourceful and has always been helpful to my family as
well as to our community. He is especially known for his good heart and his kindness to
the ones in need. He is like a family member to us; my children even call him "Uncle."
Aldo is always more than welcome in my home, because he cares for my children by
giving them good advice on how to behave their best in order to succeed in life. He
always remembers to call on their birthdays, and he sends cards for all types of holidays
and occasions.

In addition to caring for my children, Aldo has the kindness in his heart to care for other
teens in our society. He does so by offering good advice and guiding them as a friend
would to prevent them from falling into bad habits. For these reasons, I personally
recommend that Mr. Aldo Omar Crotte remain a good member of our community and I
am even hoping that someday he can work as a counselor for at risk teens, who could
benefit from his kind-spirited advice, and from his intelligent and strategic way of talking
and listening to young adolescents.

Thank your for your consideration.

Sincerely,

*Laura Castañeda*

Laura Castañeda

# Exhibit G
# 367

Fernando Crotte Sr. MD.
3240 Rivers Edge Dr.
Perrysburg, Ohio 43551
Tel.-(419) 874-4908


Perrysburg, Ohio. February 15, 2007.


To: Christopher J. Stender, Attorney at Law


This is to certify that I am Fernando Crotte Sr. M.D.
I am an American citizen living in Perrysburg , Ohio, and I obtained my
U.S. citizenship on January 15, 1971 through the Immigration and
Naturalization Service. I have been living in Toledo Ohio, where I
practiced medicine and surgery for about 40 years, and I am now
retired from active practice.

I received a call from my nephew, Aldo Omar Crotte, on February 4,
2007, where he told me that he had been arrested in San Diego
California. This was a big surprise to me since I consider him as a
person that does not belong in jail.

I met my nephew, Aldo Omar Crotte, at a family reunion in Toluca,
Mexico, in 1998. Aldo was introduced to me by his father (my cousin
Carlos Crotte), and as far as I knew, Aldo Omar Crotte was living in
San Francisco, California. Since then we have had long conversations
over the telephone. We love our families and we have a common
interest in genealogy.

I consider Aldo Omar Crotte a respectful member of my family , a
loving son of my cousin Carlos Crotte who lives in Orizaba, Veracruz,
Mexico, and a caring member of his immediate family. He appears to
me as being a hard  working individual and a very sociable and likable
person who I wish I had the opportunity to know better.
Unfortunately, the distance between us has kept us from doing so.

It is my opinion that if Aldo Omar Crotte has had problems in the past,
he is capable of improving himself.

Exhibit G
368

If there is any thing else I can answer in Aldo's behalf, please contact me at above address, and I will be glad to respond. Thank you for all your efforts in helping Aldo Omar Crotte resolve his problems.


Respectfully yours,


*Fernando Crotte Sr. M.D.*

**Fernando Crotte Sr. M.D.**


*Monica Kernahan*

MONICA KERNAHAN, Notary Public
State of Ohio, Wood County
My Commission Expires 8-26-2007


# Exhibit G
# 369

1.

# EXHIBIT H

1  **JASON I. SER**
   California State Bar Number 201816
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4  E-mail:  jason_ser@fd.org

5  Attorneys for Mr. Crotte

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10                    **(HONORABLE JAN M. ADLER)**

11 UNITED STATES OF AMERICA,           )   Case No. 07mj0177 (JMA)
                                        )
12            Plaintiff,                )   Date: June 19, 2007
                                        )   Time:2:00 p.m.
13 v.                                   )
                                        )   **DECLARATION OF VERONICA
14 ALDO OMAR CROTTE SAINEZ,             )   SALTIEL IN SUPPORT OF MEMORANDUM
                                        )   IN SUPPORT OF BAIL**
15            Defendant.                )
   _____)

16

17 I, Veronica V. Saltiel, declare:

18            1.      I am an investigator with Federal Defenders of San Diego, Inc., and work with

19 Jason I. Ser, who practices law before the courts of the State of California, and the United States District

20 Court for the Southern District of California.

21            2.      I am assigned as the investigator in the above captioned case.

22            3.      On June 11, 2007, and June 12, 2007, I contacted Maria Sainez by telephone and

23 personally spoke with her.

24            4.      She confirmed that she is the mother of Aldo Sainez Crotte.

25            5.      Ms. Sainez repeatedly characterized her current health as "very poor."

26            6.      Ms. Sainez is 59 years old.                    **Exhibit H**

27            7.      She currently resides Pittsburg, California.       **370**

28 //

                                                                          370

8.   She lives by herself in a home that she personally owns.

9.   She currently does not live with anybody.

10.   Ms. Sainez recently underwent multiple surgeries to correct eye problems.

11.   The first surgery was on January 17, 2007.

12.   The second surgery was on June 6, 2007.

13.   During each of the surgeries, physicians remove cataracts from both of her eyes.

14.   As a result of these eye surgeries, and other eye-related health issues due to her age, she has very poor eyesight.

15.   Although not legally blind, she has problems performing everyday activities.

16.   Although licensed to drive legally in the state of California, her poor eyesight precludes her from driving herself anywhere in any safe manner.

17.   Prior to his placement into custody, Ms. Sainez relied upon her son to act as her chauffeur.

18.   Since his placement into custody, she has suffered an automobile accident upon attempting to drive herself.

19.   As a result of the accident, she has suffered additional physical injuries, contributing to her already "poor" health.

20.   The accident also compounded work related knee injuries she suffered in 1998, which has made it "very difficult" to walk and caused her to be unsteady on her feet.

21.   Her lack of eyesight also precludes her from food shopping, cooking, cleaning, and, at times, taking caring of herself physically.

22.   Prior to his placement into custody, Ms. Sainez relied upon her son *exclusively* to help her with daily activities and her needs, such as food shopping, cooking, cleaning, and taking care of herself.

23.   She stated that her son "did everything for her."

24.   Ms. Sainez's current health condition requires constant treatment by physicians, necessitating weekly trips to various doctors.

25.   Prior to his placement into custody, Ms. Sainez relied upon her son to drive her to

Exhibit H
371

371

2                                    06mj0177 (JMA)

1  and from her medical appointments.

2           26.    Ms. Sainez's current health condition requires constant administration of

3  medication and the filling of various prescriptions.

4           27.    Prior to his placement into custody, Ms. Sainez relied upon her son to obtain her

5  medications and ensure she took the proper drug in the proper dosage.

6           28.    Ms. Sainez is a diabetic.

7           29.    Due to her diabetes, she requires special foods and a strictly monitored diet.

8           30.    When her sugar levels go up, her eyesight becomes impaired, she becomes prone

9  to stroke, and often faints.

10         31.    Prior to his placement into custody, Ms. Sainez relied upon her son to do her food

11  shopping and prepare many of her meals.

12         32.    Due to her poor memory, she often failed to turn off the gas for the oven or stove,

13  and an open flame would continue to burn or gas would continue be emitted.

14         33.    Ms. Sainez relied upon her son to ensure that the oven or stove were turned off

15  subsequent to usage to ensure her personal safety and welfare.

16         34.    Ms. Sainez has no other family members who are capable or able to substitute for

17  her son's care-taking functions.

18         35.    On June 12, 2007, I read the contents of this declaration, line by line, and

19  confirmed it accurately recounted her personal belief.

20

21  I declare under penalty of perjury that the foregoing is true and correct, executed on June 13, 2007, in San

22  Diego, California.

23                                               _Veronica Saltiel_

24                                               VERONICA SALTIEL

25

26                                      **Exhibit H**

27                                           **372**

28

# EXHIBIT I

31 U.S.T. 5059                                                                          Page 2
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

Mexico

Extradition

Treaty signed at Mexico City May 4, 1978;

Ratification advised by the Senate of the United States of America November 30,
1979;
Ratified by the President of the United States of America December 13, 1979;
Ratified by Mexico January 31, 1979;
Ratifications exchanged at Washington January 25, 1980;
Proclaimed by the President of the United States of America February 6, 1980;
Entered into force January 25, 1980.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE UNITED MEXICAN STATES

ARTICLE 1

Obligation to Extradite

ARTICLE 2

Extraditable Offenses

ARTICLE 3

Evidence Required

ARTICLE 4

Territorial Application

ARTICLE 5

Politicial and Military Offenses

ARTICLE 6

Non bis in idem

ARTICLE 7

Lapse of Time

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
373

31 U.S.T. 5059                                                    Page 3
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

ARTICLE 8

Capital Punishment

ARTICLE 9

Extradition of Nationals

ARTICLE 10

Extradition Procedures and Required Documents

ARTICLE 11

Provisional Arrest

ARTICLE 12

Additional Evidence

ARTICLE 13

Procedure

ARTICLE 14

Decision and Surrender

ARTICLE 15

Delayed Surrender

ARTICLE 16

Requests for extradition made by Third States

ARTICLE 17

Rule of Speciality

ARTICLE 18

Summary Extradition

ARTICLE 19

Surrender of Property

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
374

```
31 U.S.T. 5059                                              Page 4
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
(Publication page references are not available for this document.)
```

ARTICLE 20

Transit

ARTICLE 21

Expenses

ARTICLE 22

Scope of Application

ARTICLE 23

Ratification, Entry into Force, Denunciation

APPENDIX

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Extradition Treaty between the United States of America and the United Mexican States was signed at Mexico City on May 4, 1978, the text of which, in the English and Spanish languages, is hereto annexed;

The Senate of the United States of America by its resolution of November 30, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty;

The Treaty was ratified by the President of the United States of America on December 13, 1979, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of the United Mexican States;

It is provided in Article 23 of the Treaty that the Treaty shall enter into force on the date of exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on January 25, 1980; and accordingly the Treaty entered into force on that date;

NOW, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Treaty, to the end that it be observed and fulfilled with good faith on and after January 25, 1980, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of February in the year of our Lord one thousand nine hundred eighty and of the Independence of the United States of America the two hundred fourth.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit I**

**375**

31 U.S.T. 5059                                                                 Page 5
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

JIMMY CARTER

[SEAL]

By the President:

CYRUS VANCE

Secretary of State

### EXTRADITION TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE UNITED MEXICAN STATES

The Government of the United States of America and the Government of the United Mexican States;

Desiring to cooperate more closely in the fight against crime and, to this end, to mutually render better assistance in matters of extradition;

Have agreed as follows:

### ARTICLE 1

#### Obligation to Extradite

1.- The Contracting Parties agree to mutually extradite, subject to the provisions of this Treaty, persons who the competent authorities of the requesting Party have charged with an offense or have found guilty of committing an offense, or are wanted by said authorities to complete a judicially pronounced penalty of deprivation of liberty for an offense committed within the territory of the requesting Party.

2.- For an offense committed outside the territory of the requesting Party, the requested Party shall grant extradition if:

a) its laws would provide for the punishment of such an offense committed in similar circumstances, or
b) the person sought is a national of the requesting Party, and that Party has jurisdiction under its own laws to try that person.

### ARTICLE 2

#### Extraditable Offenses

1.- Extradition shall take place, subject to this Treaty, for wilful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

2.- If extradition is requested for the execution of a sentence, there shall be the additional requirement that the part of the sentence remaining to be served shall not be less than six months.

3.- Extradition shall also be granted for wilful acts which, although not being included in the Appendix, are punishable, in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit I**

**376**

31 U.S.T. 5059                                                                                         Page 6
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

accordance with the federal laws of both Contracting Parties, by a deprivation of liberty the maximum of which shall not be less than one year.

4.- Subject to the conditions established in paragraphs 1, 2 and 3, extradition shall also be granted:
    a) For the attempt to commit an offense; conspiracy to commit an offense; or the participation in the execution of an offense; or
    b) When, for the purpose of granting jurisdiction to the United States government, transportation of persons or property, the use of the mail or other means of carrying out interstate or foreign commerce, is also an element of the offense.

## ARTICLE 3

### Evidence Required

  Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place or to prove that he is the person convicted by the courts of the requesting Party.

## ARTICLE 4

### Territorial Application

  1.- For the purposes of this Treaty, the territory of a Contracting Party shall include all the territory under the jurisdiction of that Contracting Party, including airspace and territorial waters and vessels and aircraft registered in that Contracting Party if any such aircraft is in flight when the offense is committed.

  2.- For the purposes of this Treaty, an aircraft shall be considered to be in flight at any time from the moment when all its external doors are closed following the embarkation until the moment when any such door is opened for disembarkation.

## ARTICLE 5

### Politicial and Military Offenses

  1.- Extradition shall not be granted when the offense for which it is requested is political or of a political character.

  If any question arises as to the application of the foregoing paragraph, the Executive authority of the requested Party shall decide.

  2.- For the purpose of this Treaty, the following offenses shall not be considered to be offenses included in paragraph 1:

    a) The murder or other wilful crime against the life or physical integrity of a Head of State or Head of Government or of his family, including attempts to commit such an offense.
    b) An offense which the Contracting Parties may have the obligation to prosecute by reason of a multilateral international agreement.

  3.- Extradition shall not be granted when the offense for which extradition is requested is a purely military offense.

## ARTICLE 6

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit I
# 377

31 U.S.T. 5059                                                                                      Page 7
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

Non bis in idem

Extradition shall not be granted when the person sought has been prosecuted or has been tried and convicted or acquitted by the requested Party for the offense for which extradition is requested.

ARTICLE 7

Lapse of Time

Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or requested Party.

ARTICLE 8

Capital Punishment

When the offense for which extradition is requested is punishable by death under the laws of the requesting Party and the laws of the requested Party do not permit such punishment for that offense, extradition may be refused unless the requesting Party furnishes such assurances as the requested Party considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

ARTICLE 9

Extradition of Nationals

1.- Neither Contracting Party shall be bound to deliver up its own nationals, but the executive authority of the requested Party shall, if not prevented by the laws of that Party, have the power to deliver them up if, in its discretion, it be deemed proper to do so.

2.- If extradition is not granted pursuant to paragraph 1 of this Article, the requested Party shall submit the case to its competent authorities for the purpose of prosecution, provided that Party has jurisdiction over the offense.

ARTICLE 10

Extradition Procedures and Required Documents

1.- The request for extradition shall be made through the diplomatic channel.

2.- The request for extradition shall contain the description of the offense for which extradition is requested and shall be accompanied by:
   a) A statement of the facts of the case;
   b) The text of the legal provisions describing the essential elements of the offense;
   c) The text of the legal provisions describing the punishment for the offense;
   d) The text of the legal provisions relating to the time limit on the prosecution or the execution of the punishment of the offense;
   e) The facts and personal information of the person sought which will permit his identification and, where possible, information concerning his location.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I

378

31 U.S.T. 5059                                                                            Page 8
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

3.- In addition, when the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:

    a) A certified copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

    b) Evidence which, in accordance with the laws of the requested Party, would justify the apprehension and commitment for trial of the person sought if the offense had been committed there.

4.- When the request for extradition relates to a convicted person, it shall be accompanied by a certified copy of the judgment of conviction imposed by a court of the requesting Party.

If the person was found guilty but not sentenced, the extradition request shall be accompanied by a certification to that effect and a certified copy of the warrant of arrest.

If such person has already been sentenced, the request for extradition shall be accompanied by a certification of the sentence imposed and a statement indicating which part of the sentence has not been carried out.

5.- All the documents that must be presented by the requesting Party in accordance with the provisions of this Treaty shall be accompanied by a translation in the language of the requested Party.

6.- The documents which, according to this Article, shall accompany the request for extradition, shall be received in evidence when:

    a) In the case of a request emanating from the United States, they are authenticated by the official seal of the Department of State and legalized by the manner prescribed by the Mexican law;

    b) In the case of a request emanating from the United Mexican States, they are certified by the principle diplomatic or consular officer of the United States in Mexico.

### ARTICLE 11

#### Provisional Arrest

1.- In the case of urgency, either Contracting Party may request, through the diplomatic channel, the provisional arrest of an accused or convicted person. The application shall contain a description of the offense for which the extradition is requested, a description of the person sought and his whereabouts, an undertaking to formalize the request for extradition, and a declaration of the existence of a warrant of arrest issued by a competent judicial authority or a judgment of conviction issued against the person sought.

2.- On receipt of such a request, the requested Party shall take the necessary steps to secure the arrest of the person claimed.

3.- Provisional arrest shall be terminated if, within a period of 60 days after the apprehension of the person claimed, the executive authority of the requested Party has not received the formal request for extradition and the documents mentioned in Article 10.

4.- The fact that the provisional arrest is terminated pursuant to paragraph 3 shall not prejudice the extradition of the person sought if the request for extradition and the necessary documents mentioned in Article 10 are delivered at a later date.

### ARTICLE 12

#### Additional Evidence

**Exhibit I**
**379**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

31 U.S.T. 5059                                                                    Page 9
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

If the Executive authority of the requested Party considers that the evidence furnished in support of the request for extradition is not sufficient in order to fulfill the requirements of this Treaty, that Party shall request the presentation of the necessary additional evidence.

ARTICLE 13

Procedure

1.- The request for extradition shall be processed in accordance with the legislation of the requested Party.

2.- The requested Party shall make all arrangements necessary for internal procedures arising out of the request for extradition.

3.- The competent legal authorities of the requested Party shall be authorized to employ all legal means within their power to obtain from the judicial authorities the decisions necessary for the resolution of the request for extradition.

ARTICLE 14

Decision and Surrender

1.- The requested Party shall promptly communicate to the requesting Party its decision on the request for extradition.

2.- In the case of complete or partial rejection of a request for extradition, the requested Party shall give the reasons on which it was based.

3.- If the extradition is granted, the surrender of the person sought shall take place within such time as may be prescribed by the laws of the requested Party. The competent authorities of the Contracting Parties shall agree on the date and place of the surrender of the person sought.

4.- If the competent authority has issued the warrant or order for the extradition of the person sought and he is not removed from the territory of the requested Party within the prescribed period, he shall be set at liberty and the requested Party may subsequently refuse to extradite him for the same offense.

ARTICLE 15

Delayed Surrender

The requested Party, after granting the extradition, may defer the surrender of the person sought when that person is being proceeded against or is serving a sentence in the territory of the requested Party for a different offense, until the conclusion of the proceeding or the full execution of the punishment that has been imposed.

ARTICLE 16

Requests for extradition made by Third States

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
380



31 U.S.T. 5059                                                                Page 10
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

The requested Party, in the case of receiving requests from the other Contracting Party and from one or more third States for the extradition of the same person, be it for the same offense or for different offenses, shall decide to which requesting State it shall grant the extradition of that person.

### ARTICLE 17

### Rule of Speciality

1.- A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:
    a) He has left the territory of the requesting Party after his extradition and has voluntarily returned to it;
    b) He has not left the territory of the requesting Party within 60 days after being free to do so; or
    c) The requested Party has given its consent to his detention, trial, punishment or extradition to a third State for an offense other than that for which the extradition was granted.

These stipulations shall not apply to offenses committed after the extradition.

2.- If, in the course of the procedure, the classification of the offense is changed for which the person requested was extradited, he shall be tried and sentenced on the condition that the offense, in its new legal form:
    a) Is based on the same group of facts established in the request for extradition and in the documents presented in its support; and
    b) Is punishable with the same maximum sentence as the crime for which he was extradited or with a lesser sentence.

### ARTICLE 18

### Summary Extradition

If the person sought informs the competent authorities of the requested Party that he agrees to be extradited, that Party may grant his extradition without further proceedings, and shall take all measures permitted under its laws to expedite the extradition. In such cases Article 17 shall not be applicable.

### ARTICLE 19

### Surrender of Property

1.- To the extent permitted under the law of the requested Party and subject to the rights of third parties, which shall be duly respected, all articles, instruments, objects of value or documents relating to the offense, whether or not used for its execution, or which in any other manner may be material evidence for the prosecution, shall be surrendered upon the granting of the extradition even when extradition cannot be effected due to the death, disappearance, or escape of the accused.

2.- The requested Party may condition the surrender of articles upon a satisfactory assurance from the requesting Party that the articles will be returned to the requested Party as soon as possible.

### ARTICLE 20

### Transit

# Exhibit I
# 381

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

31 U.S.T. 5059                                                                    Page 11
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

1.- The right to transport through the territory of one of the Contracting Parties a person who is not a national of that Contracting Party surrendered to the other Contracting Party by a third State shall be granted on presentation made through the diplomatic channel of a certified copy of the decision on extradition, provided that reasons of public order are not opposed to the transit.

2.- The authorities of the transit State shall be in charge of the custody of the extradited person while that person is in its territory.

3.- The Party to which the person has been extradited shall reimburse the State through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

ARTICLE 21

Expenses

The requested Party shall bear the expenses of the arrangements referred to in Article 13, with the exception that the expenses incurred for the translation of documents and, if applicable, for the transportation of the person ordered extradited shall be paid by the requesting Party.

ARTICLE 22

Scope of Application

1.- This Treaty shall apply to offenses specified in Article 2 committed before and after this Treaty enters into force.

2.- Requests for extradition that are under process on the date of the entry into force of this Treaty, shall be resolved in accordance with the provisions of the Treaty of 22 February, 1899, [FN1] and the Additional Conventions on Extradition of 25 June 1902, [FN2] 23 December 1925, [FN3] and 16 August 1939. [FN4]

FN1. TS 242; 31 Stat. 1818.

FN2. TS 421; 9 Bevans 918.

FN3. TS 741; 44 Stat. 2409.

FN4. TS 967; 55 Stat. 1133.

End of Footnote(s).

ARTICLE 23

Ratification, Entry into Force, Denunciation

1.- This Treaty shall be subject to ratification; the exchange of instruments of ratification shall take place in Washington as soon as possible.

2.- This Treaty shall enter into force on the date of exchange of the instruments of ratification.

Exhibit I

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.
382

31 U.S.T. 5059                                                                                      Page 12
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

3.- On entry into force of this Treaty, the Treaty of Extradition of 22 February 1899 and the Additional Conventions on Extradition of 25 June 1902, 23 December 1925 and 16 August 1939 between the United States of America and the United Mexican States, shall cease to have effect without prejudice to the provisions of Article 22.

4.- Either Contracting Party may terminate this Treaty by giving notice to the other Party. The termination shall take effect six months after the receipt of such notice.

Done in two originals, in the English and Spanish languages, both equally authentic, at Mexico City this fourth day of May, one thousand nine hundred seventy-eight.

Cyrus Vance.

(Signature)

S. Roel.

(Signature)

## APPENDIX

1. Murder or manslaughter; abortion.

2. Malicious wounding or injury.

3. Abandonment of minors or other dependents when there is danger of injury or death.

4. Kidnapping; child stealing; abduction; false imprisonment.

5. Rape; statutory rape; indecent assault; corruption of minors, including unlawful sexual acts with or upon children under the age of consent.

6. Procuration; promoting or facilitating prostitution.

7. Robbery; burglary; larceny.

8. Fraud.

9. Embezzlement.

10. An offense against the laws relating to counterfeiting and forgery.

11. Extortion.

12. Receiving or transporting any money, valuable securities, or other property knowing the same to have been unlawfully obtained.

13. Arson; malicious injury to property.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
383

383

31 U.S.T. 5059                                                                Page 13
1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059
**(Publication page references are not available for this document.)**

14. Offenses against the laws relating to the traffic in, possession, production, manufacture, importation or exportation of dangerous drugs and chemicals, including narcotic drugs, cannabis, psychotropic drugs, opium, cocaine, or their derivatives.

15. Offenses against the laws relating to the control of poisonous chemicals or substances injurious to health.

16. Piracy.

17. Offenses against the safety of means of transportation including any act that would endanger a person in a means of transportation.

18. An offense relating to unlawful seizure or exercise of control of trains, aircraft, vessels, or other means of transportation.

19. Offenses against the laws relating to prohibited weapons, and the control of firearms, ammunition, explosives, incendiary devices or nuclear materials.

20. An offense against the laws relating to international trade and transfers of funds or valuable metals.

21. An offense against the laws relating to the importation, exportation, or international transit of goods, articles, or merchandise, including historical or archeological items.

22. Violations of the customs laws.

23. Offenses against the laws relating to the control of companies, banking institutions, or other corporations.

24. Offenses against the laws relating to the sale of securities, including stocks, bonds and instruments of credit.

25. Offenses against the laws relating to bankruptcy or rehabilitation of a corporation.

26. Offenses against the laws relating to prohibition of monopoly or unfair transactions.

27. Offenses against the laws relating to protection of industrial property or copyright.

28. Offenses against the laws relating to abuse of official authority.

29. Bribery, including soliciting, offering and accepting bribes.

30. Perjury; false statements to any governmental authority. Subornation of perjury or false statements.

31. Offenses against the laws relating to obstruction of justice, including harboring criminals and suppressing evidence.

1980 WL 309106 (U.S. Treaty), T.I.A.S. No. 9656, 31 U.S.T. 5059

END OF DOCUMENT

Exhibit I
384

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT J

1

2

3

4

5

6                         UNITED STATES DISTRICT COURT

7                        SOUTHERN DISTRICT OF CALIFORNIA

8                           **(HONORABLE JAN M. ADLER)**

9   UNITED STATES OF AMERICA,        )   CASE NO.   07MJ0177 (JMA)
                                      )
10              Plaintiff,            )
                                      )
11   v.                               )
                                      )   ORDER GRANTING MOTION SEEKING STAY OF
12   ALDO OMAR CROTTE SAINEZ,         )   CERTIFICATION OF EXTRADITION PENDING
                                      )   HABEAS TO DISTRICT COURT [Doc. No. 31]
13              Defendant.            )
                                      )
14   _____)

15

16          **IT IS HEREBY ORDERED** that the certification of extradition in the matter of extradition

17   of ALDO OMAR CROTTE SAINEZ be stayed pending a habeas determination by the district court in the

18   Southern District of California.

19          **IT IS SO ORDERED.**

20   DATED:  February 8, 2008

21
                                        _____
22                                      Jan M. Adler
                                        U.S. Magistrate Judge
23

24

25

26                                                     **Exhibit J**
27                                                        **384**
28

# EXHIBIT K

ORIGINAL

1                    UNITED STATES DISTRICT COURT

2                 SOUTHERN DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA,        )  Case no. 07MJ0177-JMA
                                    )
5            Plaintiff,             )  San Diego, California
                                    )
6  vs.                              )  Wednesday,
                                    )  September 26, 2007
7  ALDO OMAR CROTTE SAINEZ,         )  10:00 a.m.
                                    )
8            Defendant.             )
   _____ )

9

10                   TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JAN M. ADLER
11                UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiff:         CHRISTOPHER TENORIO, ESQ.
                               Assistant United States
14                              Attorney
                               880 Front Street
15                             San Diego, California 92101

16  For the Defendant:         FEDERAL DEFENDERS OF SAN DIEGO
                               BY:  JASON SER, ESQ.
17                             225 Broadway, Suite 900
                               San Diego, California 92101
18                             (619) 234-8467

19  Transcript Ordered By:     JASON SER, ESQ.

20  Transcriber:               Sherri Lattuca
                               Echo Reporting, Inc.
21                             6336 Greenwich Drive, Suite B
                               San Diego, California 92122
22                             (858) 453-7590

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

Exhibit K
385

*Echo Reporting, Inc.*

1

1 | SAN DIEGO CALIFORNIA WEDNESDAY SEPTEMBER 26, 2007 10:00 A.M.

2 | --oOo--

3 | (Call to order of the Court.)

4 | THE CLERK:  Calling matter number one on calendar,

5 | 07MJ177, United States of America versus Aldo Omar Crotte

6 | Sainez, on calendar for extradition hearing.

7 | MR. SER:  Good morning, your Honor.  Jason Ser on

8 | Defendant's behalf.  Crotte is now present before the Court.

9 | THE COURT:  Good morning.

10 | MR. TENORIO:  And good morning, your Honor.  Chris

11 | Tenorio for the United States.

12 | THE COURT:  Good morning.  All right, gentlemen,

13 | this is the resumption of the extradition hearing.  We had

14 | an initial session a couple of weeks ago and I think that I

15 | should state at the outset that there are really a couple of

16 | areas I would like to focus on today.

17 | I have read everything that you have submitted and

18 | I don't need to have you regurgitate what you stated so well

19 | in your briefs already.  But what I would like to do is hone

20 | in a little bit on the statute of limitations issues in

21 | particular and then, to some extent, on probable cause as

22 | well.

23 | So let's start with the statute of limitations.

24 | What I want to make sure I understand is the parties'

25 | positions on both the Mexican statute of limitations and the

**Exhibit K**

**386**

54

1          THE COURT:  Okay.  Are you stating that there is

2  additional --

3          MR. TENORIO:  No, no, just other than what we

4  cited in our short summary of the probable cause.  In other

5  words, the sworn statements go on for, you know, more pages

6  than --

7          THE COURT:  Oh, if what you're saying is that I

8  should be aware of the fact that what you stated is a

9  summary and that there's a lot more in what has already been

10  submitted --

11          MR. TENORIO:  Correct.

12          THE COURT:  -- I understand that.  I think what

13  Mr. Ser was concerned about is whether there was anything

14  else that you were relying upon and I take it there is not.

15          MR. TENORIO:  No, no.

16          THE COURT:  Okay.  Just one minute, please.  I'm

17  going to take just a very brief recess.

18      (Proceedings recessed briefly.)

19          THE COURT:  I would like to ask Mr. Gonzalez a

20  question or two, just to help my understanding of some --

21  help further my understanding of Mexican procedures.

22          Mr. Gonzalez, could you come to the podium and we

23  will swear you in?

24          THE CLERK:  Please raise your right hand.

25          MR. GONZALEZ  (Through interpreter):  I want to

Exhibit K
387

*Echo Reporting, Inc.*

55

1 tell the judge that I'm not part of this proceeding.  I work

2 at the Consulate, that's all, and I'm not here as an expert,

3 either.

4          THE COURT:  Okay.

5          MR. GONZALEZ:  I'm just here to assist the

6 prosecutor.

7          THE COURT:  All right, so -- sir, I guess what

8 you're saying is you don't feel that you have any expertise

9 in the legal matters that we've been discussing today?

10          MR. GONZALEZ:  Well, I have knowledge of these

11 things because I am an attorney, but I'm not part of this

12 proceeding.

13          THE COURT:  All right, and therefore you wouldn't

14 feel comfortable answering the questions I might have about

15 Mexican procedures?

16          MR. GONZALEZ:  Yes, if I can answer them I'll be

17 very glad to.

18          THE COURT:  Okay, you just wanted to make clear

19 that you're not formally a part of these proceedings; is

20 that correct?

21          MR. GONZALEZ:  Thank you.

22          THE COURT:  Okay.  I want to ask counsel; I do

23 have a couple of questions that I wouldn't mind asking, but

24 is there any objection to my doing so, on either side?

25          MR. TENORIO:  No, not from the Government; your

**Exhibit K**

**388**

56

1 Honor.

2          MR. SER:  As long as I would have an opportunity

3 to ask him questions, a follow-up to any additional

4 evidence.

5          THE COURT:  Well, let me just ask this of

6 Mr. Tenorio; you are not proffering Mr. Gonzalez as an

7 expert in support of the Government's request for

8 extradition, are you?

9          MR. TENORIO:  No.

10         THE COURT:  Mexico's request for extradition?

11         MR. TENORIO:  No, your Honor, I have gone to him

12 and his colleague just for assistance in finding the legal

13 answers from Mexico.  They work both -- let me explain this.

14 They work for the equivalent of the Department of Justice in

15 Mexico and just like in the United States, they have the

16 equivalent of the Department of State that would ultimately

17 be responsible for the extradition.  But the underlying

18 legal questions they do have knowledge on.  So they are both

19 liaisons and assistants in providing the legal documents.

20         THE COURT:  So if I were to ask him some questions

21 about Mexican legal procedures would either side argue that

22 his answers would have no affect on these proceedings

23 because he's not being proffered as an expert?

24         MR. SER:  I'm not so concerned with him not being

25 proffered as an expert as I am with him not being a state

Exhibit K
389

*Echo Reporting, Inc.*

57

1  attorney in the State of Jalisco.  He's a federal employee

2  who works for the equivalent of the DOJ and I don't know if

3  he has a foundation to testify to what occurs in Jalisco.

4  That's my concern.

5          MR. TENORIO:  I think that's a valid concern.  I

6  do think within Mexico, however, there is -- the system is a

7  little different.  I think he could be very clear that he

8  doesn't know the difference between the federal and the

9  state system, but the interplay is much like ours here as

10  far as federal comity, so --

11          THE COURT:  All right.  Well, I will ask him a few

12  questions, but I recognize the caveat that you have stated,

13  sir.

14          MR. GONZALEZ:  All right.  I also want to clear up

15  that my diplomatic standing -- status; I have immunity

16  jurisdiction -- jurisdiction, and other questions that won't

17  be asked by your Honor.

18          THE COURT:  I'm sorry, I didn't understand.

19          MR. GONZALEZ:  Okay.  I am a diplomat.

20          THE COURT:  Yes.

21          MR. GONZALEZ:  And I have immunity to

22  jurisdiction --

23          MR. TENORIO:  I think he's saying he's not subject

24  to laws of perjury.

25          MR. GONZALEZ:  No, no, I'm not saying that.

**Exhibit K**

**390**

*Echo Reporting, Inc.*

58

1 There's no problem, I'm not saying that.  I will be very

2 glad to answer.

3              THE COURT:  Okay.  All right.

4              THE CLERK:  Please raise your right hand.

5                   RUBEN GONZALEZ - WITNESS - SWORN

6              THE WITNESS:  Yes, with the clarification that I'm

7 not going to give any evidence, I'm just going to try to

8 answer some questions to try to resolve this in the best way

9 possible at the request of your Honor, and if there's no

10 problem with the Assistant U.S. Attorney.

11              MR. TENORIO:  No problem with the Government.  I

12 think he wants to make clear he wants to address the legal

13 issues as opposed to facts.

14              THE COURT:  Understood, understood.

15              THE WITNESS:  Okay.

16              THE COURT:  All right.  Thank you, sir.  Can you

17 tell me, based on your knowledge of Mexican law and your

18 experience, are legal proceedings initiated -- criminal

19 proceedings initiated in Mexico through the issuance of an

20 arrest warrant or in some other manner?

21              THE WITNESS:  The proceeding is begun with the

22 criminal notification or notice and the facts that are known

23 by the prosecutor's office.  And he makes an investigation

24 and presents before the judge -- files before the judge,

25 issues to the judge, the facts that constitute the crime

Exhibit K
391

*Echo Reporting, Inc.*

59

1 | And with those facts, the judge issues, or doesn't, an order
2 | of arrest.
3 | THE COURT:  All right, and so --
4 | THE WITNESS:  That's the way the system works.
5 | THE COURT:  Okay, thank you.  I understand then
6 | that -- I don't know how familiar you are with the exhibits
7 | to this matter, sir, but I think what you're talking about
8 | are Exhibits -- the equivalent of Exhibits 13 and 14 to this
9 | diplomatic note.  Are you familiar with those documents?
10 | THE WITNESS:  Well, I don't know this document in
11 | particular, but this is a resolution from the prosecutor's
12 | office --
13 | THE COURT:  And is that Exhibit 13 to which you're
14 | referring?
15 | THE WITNESS:  From what it says here, yes.
16 | THE COURT:  Okay, go ahead, sir.  I didn't mean to
17 | interrupt you.  Did you have more to say?
18 | THE WITNESS:  No, there's no problem, your Honor.
19 | THE COURT:  Okay, and I notice Exhibit 13 says
20 | "indictment" on it.  Can you tell me what that means in
21 | Mexico?
22 | THE WITNESS:  Yes, that the judge -- no, pardon
23 | me, the prosecutor's office has elements to consider that a
24 | crime may have been committed, that with its -- according to
25 | the proof that he reviewed and the elements the facts, he

Exhibit K
392

*Echo Reporting, Inc.*

60

1 considers that a crime has been committed.

2          But the judge -- he presents to the judge, he

3 presents this document, he files this document with the

4 judge and the judge decides if there are -- if the facts

5 qualify for the crime.  This is a common procedure, process,

6 in Mexico.  Doesn't matter whether it's state or federal.

7 The constitution gives the same rights at the federal or the

8 state level.

9          THE COURT:  All right.

10          THE WITNESS:  As far as state versus federal, the

11 investigation corresponds to the prosecutor's office which

12 has the monopoly and exercise or authority over the penal

13 system.

14          THE COURT:  All right, and what you have

15 described, I take it, is the manner in which criminal

16 proceedings are instituted in the Republic of Mexico.

17          THE WITNESS:  The penal -- the criminal process?

18 I don't understand.

19          THE COURT:  Yes, if someone is going to be -- if

20 charges are being considered against a defendant in Mexico,

21 or a potential defendant in Mexico, the process you

22 described, as I understand it, is what is used to determine

23 whether charges will be instituted and to initiate those

24 charges.

25          THE WITNESS:  Okay.  First, you get the criminis

Exhibit K
393

61

1 (sic) notice to the prosecutor's office. He begins the

2 investigation about the facts and the information given by

3 the parties or witnesses, which could be the witnesses or

4 police officers. It depends, it varies. It could be an

5 expert. All that is given to an investigation done before,

6 ahead of time. When the prosecutor's office has concluded

7 its investigation, then it's sent to a judge and the judge

8 determines, decides, that according to the facts that were

9 presented, the proof that was presented, if there are the

10 elements or facts to decide, to determine, that they can be

11 subject to a proceeding or not. In the case that they do

12 find the elements, the proof, they will order or make an

13 order for the arrest.

14          THE COURT: All right, thank you. All right, does

15 either --

16          THE WITNESS: Can I help in any other --

17          THE COURT: No, I think that was very helpful and

18 I appreciate your willingness to respond to my questions.

19 Is there anything that either lawyer needs to ask?

20          MR. SER: I do have questions, your Honor.

21          THE COURT: Okay.

22          MR. SER: Sir, you don't practice in the State of

23 Jalisco, do you?

24          THE WITNESS: No.

25          MR. SER: Okay, you haven't practiced there, have

**Exhibit K**
**394**

*Echo Reporting, Inc.*

62

1  you?

2         THE WITNESS:  No.

3         MR. SER:  Does the required -- is there a

4  requirement in Mexico that when a prosecutor submits its

5  findings to a judge, that it swear or attest to the

6  truthfulness of what's contained in its applications?

7         THE WITNESS:  Well, the prosecutor's office is a

8  good-faith institution.  The only thing that it does is that

9  it presents the evidence, or the proof, and the

10 declarations, and tries to make them in an adequate form so

11 that they can present them to a possible charge that they

12 are formulating.

13        But the judge, based on what they present,

14 determines if there are, or not, elements sufficient and

15 well-based to issue an order of arrest.

16        MR. SER:  I understand that.  But my question --

17        THE WITNESS:  It doesn't mean that he's guilty or

18 not until an entire proceeding is completed because it's a

19 -- it's a belief, a presumption, that it was committed.  I'm

20 talking about another subject now.

21        MR. SER:  My question now, is there a legal

22 requirement that documents from the prosecutor be signed

23 under penalty of perjury or that there be a manifestation as

24 to their truthfulness before being submitted to a judge?

25        THE WITNESS:  Okay.  The prosecutor's office is a

Exhibit K

395

63

1  good-faith institution.  If someone has lied, there's going

2  to be a proceeding and in that proceeding, if someone lied,

3  it's a crime.  But the prosecutor's office only integrates

4  documents, proof, evidence, and with its best knowledge, he

5  files the request before the judge -- the petition before

6  the judge so that he can determine if there are or not

7  elements to suppose -- or that's a probable cause that it

8  was committed.  That's the way it is.

9           MR. SER:  I think that answered my question that

10 there isn't.

11          THE COURT:  All right.

12          MR. SER:  My next question is; there is no

13 mechanism where the prosecutor would present any supposed

14 findings pursuant to an investigation to a body of citizens

15 instead of the judge in order to make a determination as to

16 whether a crime might have been committed.

17          THE WITNESS:  That judicial figure component is

18 something we don't have.  That's a different judicial

19 system.  That's a -- what we have in Mexico is a Roman

20 system as in some states that you have here in this great

21 country.  For example, the State of Louisiana --

22          THE COURT:  Yes, I was just thinking of Louisiana,

23 yes.

24          THE WITNESS:  But this body doesn't exist, the

25 jury.  But I understand it's that they would determine what

Exhibit K

396

*Echo Reporting, Inc.*

64

1  the facts are, or qualify the facts.  It doesn't exist in

2  Mexico.  We have the prosecutor's office, which I repeat

3  once again is a good-faith institution, and their

4  responsibility is to integrate the documents, the proof, and

5  the facts by the witnesses to integrate the file.  And if

6  possible, to find the elements and they present it, or they

7  file it, before the judge and he's the one that determines,

8  or decides.  The authority, which is executive -- this case,

9  the prosecutor's office doesn't have the faculty to issue an

10 order of arrest, an arrest warrant.

11         All the proceedings have to be before a judicial

12 authority where it is determined whether there is a legal

13 cause for the proceeding.

14         MR. SER:  Now, I want to -- just one final

15 question.  You mentioned earlier that the prosecutor

16 proceeds on an assumption that a crime was committed by the

17 person being investigated; is that correct?

18         THE WITNESS:  That there are elements for the

19 presumption and it's a presumption because until a judge

20 decides and gives his order that a crime was committed in an

21 order, it's not possible to say that somebody is -- has

22 committed the crime.  That's why you have the presumption.

23         MR. SER:  I don't think I have anything further

24 right now.

25         THE COURT:  Mr. Tenorio, any questions?

Exhibit K

397

*Echo Reporting, Inc.*

65

1           MR. TENORIO:  No, your Honor.

2           THE COURT:  All right, sir, thank you very much.

3           THE WITNESS:  (In English) You're welcome.  You're

4  welcome, your Honor.

5           THE COURT:  Muchas gracias.

6           THE INTERPRETER:  He wants me to tell you that,

7  "I'm going to send you a Mexican constitution in English

8  which establishes the procedure that we follow."

9           THE COURT:  Thank you.

10           THE WITNESS:  And it would be interesting for you.

11           THE COURT:  Thank you, I'm sure it would be.

12  Thank you.

13           THE WITNESS:  (In English) You're welcome.

14           THE COURT:  All right.  Counsel, thank you again

15  for your arguments, both written and oral.  I think you have

16  given us a lot to work with and consider and we will get

17  down to the task of doing so.

18           MR. SER:  Does the Court have an anticipated -- my

19  concern is just obviously, depending on what the ruling of

20  the court is, I probably, in the case of a denial, will be

21  requesting a stay of extradition file habeas petition.  I'm

22  going to make that known now on the record.  So I was asking

23  for a ballpark on time but I'll just wait for the Court's

24  order.

25           THE COURT:  I can only say in due course, but we

Exhibit K
398

*Echo Reporting, Inc.*

68

1        I certify that the foregoing is a correct

2 transcript to the best of my ability from the electronic

3 sound recording of the proceedings in the above-entitled

4 matter.

5 _Sherri Lattuca_ _____  _10/25/07_ _____
  Transcriber                Date

6

7 FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8 _L.L. Francisco_ _____
  L.L. Francisco, President

9 Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit K**

**399**

*Echo Reporting, Inc.*

◆JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Aldo Omar Crotte Sainez | Steve Stafford, 2008 MAY -6 PM 3: 44 U.S. Marshal, et al. |

**(b)** County of Residence of First Listed Plaintiff     San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)

BY _____ DEPUTY

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

# '08 CV 0819 J AJB

**(c)** Attorney's (Firm Name, Address, and Telephone Number)    Jason I. Ser
Federal Defenders of San Diego, Inc.
225 Broadway, Ste. 900, San Diego, CA 92101

Attorneys (If Known)    KAREN P. HEWITT, U.S. ATTORNEY
Christopher Tenorio, AUSA
880 Front Street, San Diego, CA 92801
(619) 557-5662

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☒ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. § 2241

Brief description of cause:  Petition for Writ of Habeas Corpus

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE    May 6, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 15057    AMOUNT $5.00    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

T$ 05/06/08



# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 150577   -- MB
# * * C O P Y * *
# May 06, 2008
# 15:41:45

## Habeas Corpus
USAO #.: 08CV0819 HABEAS CORPUS
Judge..: NAPOLEON A JONES, JR
Amount.:              $5.00 CA


## Total-> $5.00


FROM: ALDO OMAR CROTTE SAINEZ
      VS STEVE STAFFORD, ACTING US
      MARSHAL, ET AL